IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:01-CV-269-H(3)

FILED

FEB 1 2 2002

DAVID W. DANIEL, CLERK
US DISTRICT COURT, EDNC
BY _____ DEP. CLERK

BABAK DOWLATSHAHI,                                )
                                                  )
                          Plaintiff,              )
                                                  )
            v.                                    )
                                                  )          **SECOND**
BIFS TECHNOLOGIES CORPORATION,                    )   **AMENDED COMPLAINT**
BEACHACCESS.NET, FLORIDA ATLANTIC                 )
STOCK TRANSFER, INC., JASPER KNABB,               )      **JURY TRIAL DEMANDED**
EDWARD D. JONES & CO., L.P., ERIC                 )
SWIDER, AND ALPHA KEYSER,                         )
                                                  )
                          Defendants.             )

NOW COMES Plaintiff Babak Dowlatshahi complaining of the Defendants BIFS

Technologies Corporation, formerly known as Biofiltration Systems, Inc. ("BIFS"), Jasper

Knabb, Florida Atlantic Stock Transfer, Inc. ("Florida Atlantic"), Edward D. Jones & Co., L.P.

("Edward Jones"), BeachAccess.Net, Inc. ("BeachAccess"), Alpha Keyser, and Eric Swider

(collectively referred to as "Defendants"), and alleges and says:

### NATURE OF ACTION

1.      This Amended Complaint states claims pursuant to Sections 10, 20, and 20A of

the Securities Exchange Act of 1934 ("Exchange Act") and the rules and regulations

promulgated thereunder; Sections 5 and 12(a)(1) of the Securities Act of 1933 ("Securities Act");

the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§1961, *et seq.* ("RICO");

the National Association of Securities Dealers (the "NASD") Rules of Conduct; the North

Carolina RICO Act, N.C.G.S. §§75D-1, *et seq.*; the North Carolina securities laws, N.C.G.S.

§§78A-56, 78C-8 and 78C-38; the North Carolina Unfair and Deceptive Trade Practices Act,

N.C.G.S. §75-1.1, *et seq.*; and the Florida Investment securities laws on registration, Fla. Stat. §678.4011. This Amended Complaint further asserts claims for breach of contract, negligence, gross negligence, fraudulent misrepresentation, negligent misrepresentation, breach of fiduciary duty, civil conspiracy, and tortious interference of a contract right.

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. §1331 in that there are asserted herein claims arising under the laws of the United States, in particular the Securities Act, the Exchange Act, and RICO. This Court also has jurisdiction under 28 U.S.C. §1332 because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and Plaintiff and Defendants are from different states. Jurisdiction over the federal statutory claims is also conferred by 28 U.S.C. §1337; over the RICO claim by 18 U.S.C. §1964(c); and over the federal securities claims by Section 22(a) of the Securities Act and Section 27 of the Exchange Act. The Court also has supplemental jurisdiction under 28 U.S.C. §1367.

3. Venue is proper in this Court pursuant to Section 22(a) of the Securities Act, Section 27 of the Exchange Act, 28 U.S.C. §1391, and 18 U.S.C. §1965(d).

## PARTIES

4. Plaintiff Babak Dowlatshahi is a citizen of the State of North Carolina and resides in Fayetteville, Cumberland County, North Carolina. Prior to April 4, 2000, Babak Dowlatshahi was the sole proprietor and owner of P.C. Wholesale ("PCW"), a business previously located at 5111 Yadkin Road, Fayetteville, North Carolina. Babak Dowlatshahi opened PCW in November 1999. Prior to April 4, 2000, Babak Dowlatshahi did not own any securities or stock and did not have any experience in investing in securities.

2

5.    Defendant BIFS is a corporation organized and existing under the laws of Florida, having its principal place of business at 2075 Fruitville Road, Suite 200, Sarasota, Florida 34237. BIFS was incorporated on December 17, 1992 under the name BioFiltration Systems, Inc. On October 3, 2000, BioFiltration Systems, Inc. changed its name to BIFS Technologies Corporation.[1]  BIFS stock is currently quoted on the National Daily Quotation Bureau Pink Sheets under the symbol "BIFT." BIFS has filed documents with the Securities and Exchange Commission (the "SEC") to become a reporting company under the Exchange Act and qualify for listing on the OTC Electronic Bulletin Board (the "OTC EBB"). Upon information and belief, BIFS has not yet qualified for listing on the OTC EBB. BIFS' common stock is not registered under the Securities Act. As such, the vast majority of BIFS' outstanding common shares are restricted securities that are not freely tradable.

5a.    At all relevant times, Alpha Keyser was the President, CEO, and a director of BIFS. Upon information and belief, Alpha Keyser is a citizen and resident of Sarasota, Florida. Alpha Keyser is a controlling person of BIFS due to his position with the company. Upon information and belief, Alpha Keyser, at all relevant times, had a material role in drafting, producing, directing, reviewing, approving, and/or disseminating information and statements concerning BIFS to potential investors, the public, Babak Dowlatshahi, and other individuals.

6.    Upon information and belief, Defendant Eric Swider is a citizen and resident of Myrtle Beach, South Carolina. At all times alleged in the Amended Complaint, Eric Swider was a registered representative and an employee of Edward Jones. His office is located at 312 79th Ave., N. Myrtle Beach, South Carolina 29572. On April 12, 2000, he became registered and licensed with the National Association of Securities Dealers ("NASD") to do business in North

---

[1] For the purposes of this Amended Complaint, "BIFS" refers to BIFS Technologies Corporation before and after its

Carolina as a stockbroker. Eric Swider's conduct, as alleged herein, was in the course and scope of his employment and his acts were with the expressed and/or implied authority of his employer, Edward Jones.

7. Defendant Edward Jones is a brokerage firm organized and existing as a limited partnership under the laws of Missouri, having a principal place of business at 12555 Manchester Road, St. Louis, Missouri 63131-3729. Edward Jones is registered and licensed as a "broker-dealer" with the NASD to do business in all fifty states. Edward Jones has multiple offices located in North Carolina.

8. Defendant Florida Atlantic is a transfer agent incorporated and existing under the laws of Florida, having a principal place of business at 7130 Nob Hill Road, Tamarac, Florida 33321. Florida Atlantic is BIFS' transfer agent.

9. Defendant BeachAccess is a corporation organized and existing under the laws of the State of South Carolina with it principal place of business at 9618 North Kings Highway, Myrtle Beach, South Carolina 29572. In March 2000, BIFS began acquisition negotiations with BeachAccess and finalized an agreement in April 2000, at which time BeachAccess became a wholly owned subsidiary of BIFS. The terms of the acquisition provided for, among other things, the issuance of restricted and unrestricted shares of BIFS common stock. Further, upon information and belief, a total of 8,000,000 shares of restricted and unrestricted BIFS common stock were issued to the former owner and certain employees of BeachAccess.

10. After BIFS acquired BeachAccess, BIFS employed Jasper Knabb as the Chief Executive Officer of BeachAccess. Upon information and belief, in connection with the acquisition, Jasper Knabb entered into a five-year employment agreement with BIFS providing

name change.

him compensation including 4,000,000 shares of restricted and unrestricted BIFS common stock, an annual salary of $60,000.00, and options for 3,250,000 shares of BIFS common stock, upon signing, and options for 4,000,000 shares of BIFS stock on January 1 of each year for 3 years beginning on January 1, 2001.

11.     Upon information and belief, Jasper Knabb is a resident and citizen of South Carolina. Upon information and belief, Jasper Knabb was the owner or co-owner of Beach Access prior to its acquisition by BIFS. After BIFS acquired BeachAccess, BIFS employed Jasper Knabb as BeachAccess' Chief Executive Officer ("CEO"). He was authorized by BIFS to identify and acquire additional companies on behalf of BIFS. At all times relevant to this Amended Complaint, Jasper Knabb was an employee of BIFS and BeachAccess and his acts, as alleged herein, were with the express and/or implied authority of BIFS and BeachAccess. Upon information and belief, Jasper Knabb is a resident and citizen of South Carolina.

12.     Upon information and belief, in or around April 2000, Paul Aubin became the Vice-President of BIFS in charge of Operations of BeachAccess. Prior to April 2000, Paul Aubin was the President of Alliance Computers, LLC ("Alliance"). Upon information and belief, BIFS acquired Alliance in or around April 2000, and in connection with that acquisition, Paul Aubin became BIFS' Vice-President in charge of BeachAccess' operations.

## FACTUAL BACKGROUND

### PCW before the April 4, 2000 Acquisition of PCW

13.     In November 1999, Babak Dowlatshahi opened PCW in Fayetteville, North Carolina, as its sole proprietor. PCW was in the business of selling computer components and equipment. PCW employed three individuals: Babak Dowlatshahi, Kevin Olmstead, and Sean Chester.

5

14.     Within a short period of time, Babak Dowlatshahi developed trusting relationships with various vendors and suppliers. These vendors and suppliers sold computer components and equipment to PCW on credit. PCW's vendors and suppliers allowed Babak Dowlatshahi to use postdated checks to purchase inventory on credit.

15.     During the last week of March, 2000, Jasper Knabb telephoned Kevin Olmstead and offered to buy PCW's assets and liabilities for $200,000.00. Kevin Olmstead stated that he was not the owner but would convey the offer to Babak Dowlatshahi.

16.     In his conversation with Kevin Olmstead, Jasper Knabb made the following representations:

        a.     BIFS had acquired BeachAccess;

        b.     Jasper Knabb was BeachAccess' new CEO;

        c.     BIFS was interested in acquiring PCW; and

        d.     BIFS authorized Jasper Knabb to negotiate the acquisition of PCW.

17.     In his telephone conversation with Kevin Olmstead, Jasper Knabb invited Kevin Olmstead and Babak Dowlatshahi to discuss the potential acquisition of PCW at Eric Swider's Edward Jones office located in Myrtle Beach, South Carolina.

**The April 4, 2000 Meeting and Acquisition of PCW**

18.     On the morning of April 4, 2000, Babak Dowlatshahi and Kevin Olmstead traveled to the offices of Edward Jones in Myrtle Beach, South Carolina. They met with Jasper Knabb and Eric Swider.

19.     Jasper Knabb again stated that he was authorized to transact business on BIFS' behalf, and in particular, to review PCW's financial information and negotiate the terms of the acquisition on BIFS' behalf.

RALEIGH\303174_3

20.     Eric Swider stated that he was BIFS' financial adviser. Eric Swider also stated that he was authorized to review PCW's financial information and determine a fair price for PCW. Eric Swider further stated that, as an Edward Jones registered representative, he would review any transactions involving the transfer and disposition of stock made in connection with BIFS' acquisition of PCW. Eric Swider said that he would ensure that such transactions were proper and complied with applicable law.

21.     Babak Dowlatshahi and Kevin Olmstead brought the following documents to the April 4, 2000 meeting for Eric Siwder's and Jasper Knabb's review:

      a.     PCW's sales reports from November 1999 through March 2000;

      b.     A list of PCW's accounts receivable;

      c.     A report on PCW's overhead costs;

      d.     A list of PCW's outstanding checks;

      e.     A list of PCW's inventory; and

      f.     A summary of PCW's sales for the prior five months.

22.     At the meeting, Babak Dowlatshahi and Kevin Olmstead also provided additional information and answered Jasper Knabb's and Eric Swider's questions regarding PCW.

23.     Babak Dowlatshahi and Kevin Olmstead specifically explained to Jasper Knabb and Eric Swider that PCW's inventory was purchased on credit from various vendors and suppliers with postdated checks. They also informed Eric Swider and Jasper Knabb that the BB&T Corporation ("BB&T") held a $20,000.00 note for a loan made to Babak Dowlatshahi and that the funds from the loan were used solely for business purposes.

24.     After reviewing PCW's financial information and discussing PCW's business with Babak Dowlatshahi and Kevin Olmstead, the meeting adjourned for lunch.

7

25.    After lunch, the meeting continued. Jasper Knabb and Eric Swider stated that they had examined PCW's financial information and that they had discussed the acquisition of PCW with Alpha Keyser. Jasper Knabb and Eric Swider made the following offer on behalf of BIFS and BeachAccess for the acquisition of PCW:

a.    BIFS would issue 25,000 shares of BIFS common stock, valued at $12.00 per share, to Babak Dowlatshahi in exchange for PCW's assets and liabilities;

b.    On April 15, 2000, the 25,000 shares of BIFS common stock used to purchase PCW would be subject to a 100:1 forward split;

c.    The 25,000 shares of stock were registered with the SEC under Section 5 of the Securities Act and would be free-trading ninety days after the acquisition;

d.    Babak Dowlatshahi would be offered a two-year employment contract with BIFS during which he would continue to work at PCW as a sales manager;

e.    The terms of Babak Dowlatshahi's two-year employment contract would include a monthly salary of $2,200.00 to be paid by BeachAccess and a $50,000.00 bonus after the first year;

f.    Kevin Olmstead would also be offered a two-year employment contract with BIFS under the same terms; and

g.    Babak Dowlatshahi would be required to open an Edward Jones account in which to deposit his BIFS common stock.

8

26.     Jasper Knabb and Eric Swider drafted a Bill of Sale (Exhibit A) memorializing the basic terms of the transaction.

27.     In response to the offer, Babak Dowlatshahi made specific inquiries as to the value of BIFS stock and BIFS' financial condition.

28.     In response to Babak Dowlatshahi's inquiries, Jasper Knabb and Eric Swider made the following representations:

a.      BIFS was a publicly-traded company involved in the business of developing methods for the disposal of hazardous wastes and the de-icing of airplane wings;

b.      BIFS had just entered into a $20 million contract for developing methods to de-ice airplane wings;

c.      BIFS was also interested in developing wireless Internet technology;

d.      BIFS was interested in acquiring various businesses to develop its technology division and to build a technology infrastructure;

e.      BIFS' net worth totaled more than $50 million;

f.      BIFS' annual sales totaled more than $3 million;

g.      The BIFS common stock to be used to purchase PCW was registered under Section 5 of the Securities Act;

h.      On April 4, 2000, the stock was worth $12.00 per share;

i.      BIFS' Board of Directors already approved a 100:1 forward stock split effective on April 15, 2000;

j.      The shares transferred to Babak Dowlatshahi would be subject to the April 15, 2000, 100:1 forward stock split;

9

k.     The BIFS common stock transferred to Babak Dowlatshahi would be registered under the Securities Act and freely tradable ninety days after the acquisition of PCW; and

l.     After the April 15, 2000, 100:1 forward stock split, the stock would be worth $3.00 per share within sixty days and $10.00 per share within one year.

29.     In describing BIFS and BIFS stock, Jasper Knabb and Eric Swider failed to disclose certain material facts. These material omissions by Jasper Knabb and Eric Swider include, but are not limited to, the following:

a.     That the 10SB12G Form for BIFS filed with the SEC on February 3, 2000 indicated, that as of June 30, 1999, BIFS' assets totaled $942,513.00 and cash received by customers totaled $2,000.00; and

b.     That the 10QSB Form for BIFS filed with the SEC on March 29, 2000 indicated that as of March 31, 2000, none of BIFS' revenue was derived from sales and that BIFS' liabilities totaled $818,900.00.

30.     Eric Swider did not have reasonable grounds for believing that BIFS stock was suitable for Babak Dowlatshahi to accept in exchange for PCW's assets and liabilities and to own as a suitable stock for investment purposes. Eric Swider did not make reasonable efforts to obtain information regarding Babak Dowlatshahi's circumstances bearing on the suitability. Neither Eric Swider nor Jasper Knabb asked for information regarding Babak Dowlatshahi's personal finances or prior investment experience. Neither Eric Swider nor Jasper Knabb had Babak Dowlatshahi complete or fill out any questionnaires regarding his personal finances or

prior investment experience. Nor did they have Babak Dowlatshahi describe his personal finances or prior investment experience to them.

31.     Babak Dowlatshahi requested that Jasper Knabb and Eric Swider provide a written contract outlining the terms of the sale of PCW and the terms of his employment contract with BIFS.

32.     Jasper Knabb and Eric Swider insisted that Babak Dowlatshahi immediately agree to the terms of the sale without consulting an attorney and without a written contract. They informed Babak Dowlatshahi that in order for the 25,000 shares to be subject to the April 15, 2000, 100:1 forward stock split, Babak Dowlatshahi would have to accept the terms of the sale of PCW and sign a Bill of Sale that day. Jasper Knabb and Eric Swider further stated that Babak Dowlatshahi would have to agree to the terms of the transaction on that day; otherwise, the offer would be withdrawn.

33.     Jasper Knabb further stated that BIFS' attorneys would draft a document verifying the terms of the sale, including the terms of the employment contract, and that this document would be sent to Babak Dowlatshahi within a few days.

34.     Based on Jasper Knabb's and Eric Swider's representations, Babak Dowlatshahi signed the Bill of Sale, thereby entering into a contract for the sale of PCW's assets and liabilities to BIFS and BeachAccess(the "Agreement"). The terms of the Agreement were as follows:

        a.     BIFS and BeachAccess would acquire the assets and liabilities of PCW, effective immediately;

        b.     Jasper Knabb, on behalf of BIFS and BeachAccess, would control the operations and management of PCW, effective immediately;

11

c.      Babak Dowlatshahi would receive 25,000 registered shares of BIFS common stock, which would be freely tradable and subject to the April 15, 2000, 100:1 forward stock split;

d.      After the April 15, 2000, 100:1 forward stock split, Babak Dowlatshahi would own 2.5 million registered shares of BIFS common stock which would be freely tradable ninety days after the Bill of Sale was signed;

e.      Babak Dowlatshahi would work for BIFS as PCW's sales manager for two years at $2,200.00 per month to be paid by BeachAccess with a $50,000.00 bonus at the end of the first year;

f.      Kevin Olmstead would also work for BIFS as a PCW employee for two years at $2,200.00 per month to be paid by BeachAccess with a $50,000.00 bonus at the end of the first year;

g.      BIFS would advance monthly installments to pay for Babak Dowlatshahi's $20,000.00 note to BB&T. However, Babak Dowlatshahi would have to sell a portion of his BIFS common stock after ninety days and reimburse BIFS with proceeds from the stock sale;

h.      Babak Dowlatshahi would open an Edward Jones account; and

i.      Eric Swider would be Babak Dowlatshahi's account executive and manage any securities held in his Edward Jones account.

35.    Jasper Knabb and Eric Swider stated that BIFS would deposit approximately $70,000.00 into PCW's bank account to pay all vendors for inventory previously purchased on credit. They also told Babak Dowlatshahi that they would visit PCW within the next few days.

12

36.     Jasper Knabb instructed Babak Dowlatshahi to inform PCW's vendors and suppliers that BIFS had acquired PCW, and that BIFS and BeachAccess would be responsible for the inventory previously purchased by PCW on credit.

**The April 6, 2000 Meeting**

37.     By April 6, 2000, Babak Dowlatshahi had not received any documents verifying the terms of the PCW acquisition from BIFS.

38.     On April 6, 2000, Babak Dowlatshahi and his brother, Sam Dowlatshahi, traveled to Myrtle Beach, South Carolina to meet with Jasper Knabb. Babak Dowlatshahi requested that Jasper Knabb produce the written document verifying the terms of the PCW acquisition as well as the terms of the employment contract. Babak Dowlatshahi also asked Jasper Knabb to confirm and clarify the terms of the Agreement.

39.     In response to Babak Dowlatshahi's inquiries, Jasper Knabb made the following representations:

       a.    BIFS was a publicly-traded company with a net worth totaling more than $50 million and annual sales totaling more than $3 million;

       b.    Babak Dowlatshahi would own 2.5 million shares of registered BIFS common stock after the April 15, 2000, 100:1 forward stock split, which would be freely tradable ninety days after the date of the Bill of Sale;

       c.    After the April 15, 2000, 100:1 forward stock split, the BIFS stock would be valued at $3.00 per share within sixty days and would increase in value to $10.00 per share within one year; and

13

> d. Babak Dowlatshahi was employed by BIFS under a two-year employment contract with a salary of $2,200.00 per month to be paid by BeachAccess and a $50,000.00 bonus after the first year.

40. Jasper Knabb further stated that BIFS' attorneys would draft a document verifying the terms of the sale and that BIFS would perform the terms under the Agreement, including issuing the above-described stock.

41. Later that day, Babak Dowlatshahi, Sam Dowlatshahi and Jasper Knabb also met with Eric Swider at his Edward Jones office. Babak Dowlatshahi asked for additional verification regarding the value of BIFS stock.

42. Eric Swider made the following representations:

> a. After the April 15, 2000, 100:1 forward stock split, Babak would own 2.5 million shares of BIFS common stock;

> b. The stock would be registered under the Securities Act and would be freely tradable;

> c. Babak Dowlatshahi would be able to sell his BIFS common stock ninety days after the date of the Bill of Sale;

> d. BIFS had just entered into a $20 million contract for developing de-icing methods for airplane wings and that it was in the process of finalizing other similar contracts;

> e. BIFS' shares would be worth $3.00 per share within sixty days and would be valued at $10.00 per share within the next year;

> f. BIFS common stock was a stock that he frequently recommended and considered suitable for many of his customers;

14

g.   BIFS is a suitable company for Babak Dowlatshahi to invest in; and

h.   BIFS was pre-approved to trade its stock over the NASDAQ.

43.   Based on Eric Swider's and Jasper Knabb's representations, Babak Dowlatshahi opened an Edward Jones account with the intent of depositing in it the shares he was to receive from BIFS. In addition, Eric Swider became Babak Dowlatshahi's stockbroker.

44.   Jasper Knabb and Eric Swider again stated that BIFS would deposit approximately $70,000.00 into PCW's bank account to pay all vendors for inventory previously purchased on credit. They also told Babak Dowlatshahi that they would visit PCW within the next few days.

**PCW after the Acquisition**

45.   After the April 4, 2000 meeting and acquisition, Babak Dowlatshahi began receiving monthly checks for $2,200.00 from BeachAccess for three months, per the terms of the Agreement and the employment contract.

46.   By mid-April, neither Eric Swider nor Jasper Knabb visited PCW in Fayetteville, North Carolina. Further, $70,000.00 had not been deposited into PCW's bank account and Babak Dowlatshahi contacted Jasper Knabb to discuss the delay in the deposit. Contrary to Jasper Knabb's and Eric Swider's prior representations, Jasper Knabb stated that he would not deposit $70,000.00 into PCW's bank accounts, but rather BeachAccess would pay PCW's vendors directly.

47.   Jasper Knabb instructed Babak Dowlatshahi to forward all proceeds from PCW's sales to his office located in Myrtle Beach daily. Jasper Knabb stated that he would use the proceeds to pay PCW's vendors for the inventory previously purchased on credit. On at least one

15

occasion, Jasper Knabb instructed Babak Dowlatshahi to send him the proceeds directly to his personal residence.

48. Over the course of several weeks, Jasper Knabb paid some but not all of PCW's vendors for the inventory purchased on credit. However, after June 12, 2000, Jasper Knabb stopped paying any of PCW's vendors for inventory previously purchased on credit. PCW's vendors and suppliers contacted Babak Dowlatshahi directly. Babak Dowlatshahi informed these vendors and suppliers that PCW had been acquired by BIFS and BeachAccess, that BeachAccess and BIFS were responsible for paying PCW's outstanding debts and that proceeds from PCW's sales were sent directly to Jasper Knabb, CEO of BeachAccess. He instructed these vendors and suppliers to contact Jasper Knabb directly.

49. In June 2000, some of the vendors and suppliers informed Babak Dowlatshahi that they had contacted Jasper Knabb and requested that BIFS pay for the inventory previously purchased by PCW on credit. They further reported that Jasper Knabb refused their requests and that Jasper Knabb was hostile and insulting. Babak Dowlatshahi received multiple complaints from vendors and suppliers regarding Jasper Knabb. These vendors and suppliers also reported that Jasper Knabb had stated that he did not like "foreigners" such as Babak Dowlatshahi.

50. Kevin Olmstead also contacted Jasper Knabb to discuss the financial condition and management of PCW. Jasper Knabb was hostile and insulting. He threatened to physically harm both Kevin Olmstead and Babak Dowlatshahi. He also made derogatory remarks about Babak Dowlatshahi and stated that he wanted to "get rid of all foreigners" from his business.

51. Because some of PCW's vendors were never paid for the inventory originally purchased by Babak Dowlatshahi as the sole proprietor of PCW before April 4, 2000, Babak Dowlatshahi's credit was damaged and his business relationships with these vendors suffered.

16

52. As a result of BIFS' and Jasper Knabb's mismanagement of PCW, PCW became indebted to numerous vendors and suppliers and the proceeds of PCW's sales were not used to pay off creditors.

53. In early July 2000, BIFS closed PCW's operations.

**The Stock Certificate Issued to Babak Dowlatshahi**

54. On or about April 13, 2000, Babak Dowlatshahi received a stock certificate for 25,000 shares of BIFS common stock. (Exhibit B). The stock certificate was dated April 10, 2000 and contained the following endorsement: "The shares represented by this certificate have not been registered under the Securities Act of 1933 and are 'restricted securities' as that term is defined in Rule 144 under the Act."

55. Babak Dowlatshahi immediately contacted Jasper Knabb and Eric Swider demanding that 25,000 registered and freely tradable shares of BIFS common stock be issued, per the Agreement.

56. Both Jasper Knabb and Eric Swider stated that Florida Atlantic made an error when it issued the stock certificate and that Babak Dowlatshahi should have received 25,000 registered shares of freely tradable BIFS common stock. Jasper Knabb and Eric Swider further stated that they would correct this error and have 25,000 registered and freely tradable shares of BIFS common stock issued to Babak Dowlatshahi.

57. After April 15, 2000, Babak Dowlatshahi failed to receive 2.5 million shares of either registered or unregistered stock in BIFS.

58. Babak Dowlatshahi contacted Jasper Knabb and Eric Swider on a weekly basis from mid-April through August 2000, requesting that the 2.5 million shares of registered and freely tradable BIFS common stock be issued.

17

59.     From mid-April through July 2000, and in response to Babak Dowlatshahi's multiple inquiries, both Jasper Knabb and Eric Swider stated BIFS authorized Florida Atlantic to issue 2.5 million shares of registered and freely tradable BIFS common stock and they would correct any errors.

60.     On June 29, 2000, Paul Aubin sent a letter to Babak Dowlatshahi. (Exhibit C). The letter stated the following:

> With respect to your stock, your stock has been registered with the SEC. As soon as the SEC releases the certificates, they will be forwarded to you.

61.     BIFS reported that it purchased PCW for 2.5 million shares to the SEC in its August 11, 2000 10QSB Form.

62.     On multiple occasions, Babak Dowlatshahi contacted Florida Atlantic inquiring as to the status of the 2.5 million shares of stock that should have been issued per the April 15, 2000, 100:1 forward stock split. On one occasion, a representative of Florida Atlantic stated that BIFS already authorized 2.5 million shares to be issued to Babak Dowlatshahi and that he should have received a stock certificate already. On another occasion, a representative of Florida Atlantic stated that BIFS did not authorize 2.5 million shares to be issued. On a different occasion, a representative of Florida Atlantic refused to answer any questions regarding the status of Babak Dowlatshahi's stock.

**Termination of Babak Dowlatshahi's Employment**

63.     On June 28, 2000, BIFS held a meeting for its employees in Myrtle Beach, South Carolina. All employees were invited to attend the meeting except Babak Dowlatshahi. Kevin Olmstead was invited and attended the meeting.

RALEIGH303174_3

64. In his letter to Babak Dowlatshahi of the following day, Paul Aubin stated that Babak Dowlatshahi was terminated from his position. The letter did not provide any reason or rationale for the termination. (Exhibit C)

**Paul Aubin's Visit to PCW**

65. Paul Aubin visited PCW in or around the first week of July 2000. Paul Aubin examined PCW's financial records and inventory.

66. Paul Aubin also met with Babak Dowlatshahi. They discussed the status of outstanding debts owed to PCW's vendors for inventory previously purchased on credit. In addition, Babak Dowlatshahi discussed his concerns regarding the Agreement.

67. Babak Dowlatshahi explained that per the terms of the Agreement he should have received 2.5 million shares of registered and freely tradable shares and that he had a two-year employment contract with BIFS.

68. Paul Aubin stated the following:

    a. Babak Dowlatshahi would issue 2.5 million registered and freely tradable shares of BIFS common stock; and

    b. He would contact Alpha Keyser to discuss Babak Dowlatshahi's concerns regarding his employment contract.

**The July 12, 2000 Apology**

69. On July 12, 2000, Jasper Knabb telephoned Babak Dowlatshahi. He admitted that BIFS had not authorized Florida Atlantic to issue 2.5 million shares of stock to Babak Dowlatshahi, in violation of the Agreement.

70. Jasper Knabb admitted that BIFS had violated the Agreement and he apologized on behalf of BIFS for failing to issue 2.5 million shares of registered and freely tradable BIFS

19

common stock. He also apologized on behalf of BeachAccess and BIFS for terminating Babak Dowlatshahi's employment.

71.    Jasper Knabb further admitted that BIFS should have issued to Babak Dowlatshahi 2.5 million shares of registered and freely tradable BIFS common stock and that he had been in contact with Alpha Keyser to discuss Babak Dowlatshahi's demands for the issuance of the stock.

72.    During the July 12, 2000 telephone conversation, Babak Dowlatshahi told Jasper Knabb that many of PCW's previous vendors and suppliers were still unpaid for the inventory previously purchased on credit. He specifically told Jasper Knabb that his business reputation and credit had been damaged by BIFS', BeachAccess' and Jasper Knabb's mismanagement of PCW.

73.    Jasper Knabb, on behalf of BIFS, BeachAccess and Alpha Keyser, made the following offer to resolve all issues between Babak Dowlatshahi and BIFS and BeachAccess:

        a.    BIFS would pay PCW's debts to all vendors for inventory previously purchased on credit;

        b.    BIFS would authorize and issue a correct stock certificate for 2.5 million shares of registered and freely tradable BIFS common stock; and

        c.    BIFS would authorize and issue 16,000 additional shares of registered and freely tradable BIFS common stock to Babak Dowlatshahi.

74.    In response to Jasper Knabb's apology and offer, Babak Dowlatshahi stated that he would accept the offer but asked that the offer be placed in writing first for his review.

75.    On July 13, 2000, Babak Dowlatshahi sent a confirmation letter to Jasper Knabb requesting that BIFS' and BeachAccess' offer be placed in writing. (Exhibit D). Jasper Knabb

20

did not respond to Babak Dowlatshahi's request. Babak Dowlatshahi has never received any writing setting forth the offer.

**Babak Dowlatshahi's Demands for 2.5 Million Shares of BIFS stock**

76. Babak Dowlatshahi, on multiple occasions, contacted all Defendants with demands for issuance of 2.5 million shares of registered and freely tradable BIFS common stock and questions as to why it had not been issued.

77. Between April 4, 2000 and June 29, 2000, Babak Dowlatshahi witnessed BIFS', BeachAccess' and Jasper Knabb's mismanagement of PCW. He lost confidence in the management and financial status of BIFS. As a result of Babak Dowlatshahi's experience with Defendants, he continued to demand that his stock be issued per the terms of the Agreement with the intent to sell his shares as soon as possible.

78. Babak Dowlatshahi contacted Alpha Keyser, Paul Aubin, Jasper Knabb, and Jasper Knabb's attorney, William Young, on multiple occasions, demanding the following:

        a. Issuance to him of 2.5 million shares of registered and freely tradable BIFS common stock;

        b. An explanation of why 2.5 millions shares of registered and freely tradable BIFS common stock had not been issued to him;

        c. An explanation of the termination of his employment; and

        d. Payment of all of PCW's vendors and suppliers for the inventory previously purchased on credit.

79. All Defendants reassured Babak Dowlatshahi that 2.5 million shares registered and freely tradable shares of BIFS common stock had been issued and that he would receive a

stock certificate indicating the same. However, all Defendants failed and refused to effectuate the issuance of 2.5 million shares of BIFS stock.

80.     By August 2000, Babak Dowlatshahi had also informed Defendants that he wanted to sell all his BIFS common stock. He was unable to sell his stock because the stock he had been issued was restricted and not freely tradable, and he had not been issued any of his post-split shares.

**FIRST CLAIM FOR RELIEF: BREACH OF CONTRACT**
(Against Defendants BeachAccess and BIFS)

81.     Paragraphs 1 through 80 are realleged and incorporated herein by reference.

82.     BIFS and BeachAccess entered into a valid, binding, and enforceable Agreement with Babak Dowlatshahi for the acquisition of PCW's assets and liabilities.

83.     Babak Dowlatshahi fulfilled his responsibilities under the terms of the Agreement by transferring control and ownership of PCW's assets to BIFS and BeachAccess. Babak Dowlatshahi also forwarded all proceeds from PCW's sales to Jasper Knabb directly.

84.     BIFS and BeachAccess unilaterally and materially breached the Agreement with Babak Dowlatshahi as follows:

    a.     BIFS failed to issue 25,000 shares of registered and freely tradable BIFS common stock to Babak Dowlatshahi;

    b.     BIFS failed to issue 2.5 million shares of registered and freely tradable shares of BIFS common stock to Babak Dowlatshahi after the April 15, 2000, 100:1 forward stock split;

    c.     BIFS and BeachAccess terminated Babak Dowlatshahi's employment without explanation; and

22

d.    BIFS and BeachAccess committed other material breaches of the Agreement to be shown at the trial of this action.

85.    As a direct result of BIFS' and BeachAccess' material breaches, Babak Dowlatshahi sustained damages, including but not limited to direct financial loss.

86.    Among other losses, Babak Dowlatshahi was unable to sell any of the 2.5 million shares of stock promised to him per the terms of the Agreement.

87.    BIFS' and BeachAccess' material breaches of the Agreement were accompanied by egregious and aggravated conduct, as described throughout this Amended Complaint, and Babak Dowlatshahi is entitled to compensatory and punitive damages in excess of $75,000.00 from Defendants BIFS and BeachAccess.

## SECOND CLAIM FOR RELIEF: BREACH OF ACTUAL AND/OR IMPLIED EMPLOYMENT CONTRACT
(Against Defendants BeachAccess and BIFS)

88.    Paragraphs 1 through 87 are realleged and incorporated herein by reference.

89.    As part of the consideration for the sale of PCW's assets and liabilities, Babak Dowlatshahi was given a two-year employment contract with BIFS. The terms of the employment contract, per the Agreement, included a $2,200.00 per month salary to be paid by BeachAccess and a $50,000.00 bonus at the end of the first year.

90.    Babak Dowlatshahi fulfilled his responsibilities under the terms of the employment contract by selling PCW's assets and liabilities and by managing PCW's daily operations.

91.    BIFS and BeachAccess unilaterally and materially breached the employment contract with Babak Dowlatshahi as follows:

23

a. BeachAccess and BIFS terminated Babak Dowlatshahi's employment without explanation or justification;

b. BIFS and BeachAccess failed to pay Babak Dowlatshahi his $2,200.00 monthly salary;

c. BIFS and BeachAccess failed to pay Babak Dowlatshahi a $50,000.00 bonus; and

d. BIFS and BeachAccess committed other material breaches of the employment contract as will be discovered and shown at trial.

92. BIFS' and BeachAccess' material breaches of the employment contract were accompanied by egregious and aggravated conduct, as described throughout this Amended Complaint, and Babak Dowlatshahi is entitled to compensatory and punitive damages in excess of $75,000.00 from BIFS and BeachAccess.

**THIRD CLAIM FOR RELIEF: CONVERSION**
(Against Defendant BIFS and Alpha Keyser)

93. Paragraphs 1 through 92 are realleged and incorporated herein by reference.

94. Per the Agreement, BIFS should have issued 25,000 shares of registered and freely tradable BIFS stock to Babak Dowlatshahi on April 4, 2000. After the April 15, 2000, 100:1 forward stock split, BIFS should have issued 2.5 million shares of registered and freely tradable BIFS stock to Babak Dowlatshahi.

95. To date, Babak Dowlatshahi has not been issued 2.5 million shares of BIFS stock, either registered or unregistered, and the 25,000 shares that he has been issued did not comport with the requirements of the Agreement.

96. BIFS has not effectuated the transfer of 2.5 million shares of BIFS stock to Babak Dowlatshahi. Upon information and belief, BIFS has not registered in its corporate books

24

the transfer of 2.5 million shares of BIFS stock to Babak Dowlatshahi nor has it authorized Florida Atlantic to issue a new stock certificate for 2.5 million shares to Babak Dowlatshahi.

97.     Per the terms of the Agreement, Babak Dowlatshahi is the rightful owner of 2.5 million shares of registered and freely tradable BIFS stock.

98.     By so refusing to register or otherwise effectuate the transfer of stock to Babak Dowlatshahi, BIFS has wrongfully exercised dominion over and thereby converted Babak Dowlatshahi's stock.

99.     BIFS has engaged in the unauthorized assumption and ownership of the 2.5 million shares of stock rightfully owned by Babak Dowlatshahi.

99a.     Upon information and belief, Alpha Keyser individually and wrongfully converted Babak Dowlatshahi's 2.5 million shares of BIFS stock:

        a.     by, without justification, instructing Florida Atlantic not to issue 2.5 million shares of BIFS stock to Babak Dowlatshahi;

        b.     by instructing BIFS' agents not to register in BIFS' corporate books the transfer of 2.5 million shares of BIFS stock to Babak Dowlatshahi;

        c.     by engaging in the unauthorized assumption of ownership of the 2.5 millions shares of stock rightfully owned by Babak Dowlatshahi; and

        d.     by selling the 2.5 million shares of stock rightfully owned by Babak Dowlatshahi and by personally receiving and using funds from the sale of the stock.

100.     Babak Dowlatshahi is entitled to recover compensatory damages in excess of $75,000.00 from BIFS and Alpha Keyser for their wrongful refusal to issue the 2.5 million shares of stock.

RALEIGH\303174_3

## FOURTH CLAIM FOR RELIEF:
## FRAUDULENT MISREPRESENTATION AND CONCEALMENT
(Against Defendants Eric Swider, Jasper Knabb, Edward Jones, BIFS, BeachAccess, and Alpha Keyser)

101.    Paragraphs 1 through 100 are realleged and incorporated herein by reference.

102.    In connection with the acquisition of PCW, Jasper Knabb and Eric Swider made various misrepresentations of material facts and failed to disclose material facts to Babak Dowlatshahi. Their conduct and misrepresentations were made with the intent to deceive Babak Dowlatshahi or with reckless disregard of the truth thereof and of Babak Dowlatshahi's rights and interests. Their conduct and misrepresentations did, in fact, deceive Babak Dowlatshahi, resulting in damage.

103.    Among other misrepresentations, Jasper Knabb and Eric Swider made the following misrepresentations:

  a.    The 25,000 shares of BIFS common stock used to acquire PCW were registered under the Securities Act and were freely tradable;

  b.    BIFS' net worth was more than $50 million as of April 4, 2000;

  c.    BIFS' annual sales totaled more than $3 million as of April 4, 2000;

  d.    After April 15, 2000, Babak Dowlatshahi would receive 2.5 million shares of BIFS stock on account of the 100:1 forward stock split;

  e.    BIFS stock, after the split, would increase in value to $3.00 per share within sixty days and $10.00 per share within one year;

  f.    BIFS was pre-approved to have its stock traded on the NASDAQ;

  g.    BIFS and BeachAccess would employ Babak Dowlatshahi under a two-year employment contract as described above;

  h.    BIFS stock is a suitable security for investment purposes; and

26

      i.    Other material misrepresentations as will be discovered and shown at trial.

    104.   Jasper Knabb and Eric Swider also failed to produce or provide any investment information to Babak Dowlatshahi, such as BIFS' prospectuses and SEC filings.

    105.   BIFS' 10SB12G/A Form, filed with the SEC on March 29, 2000, stated the following:

      a.    That BIFS' assets from 1999 totaled $947, 878.00;

      b.    That Revenues from customers in 1999 totaled $2,000.00; and

      c.    That no revenue was derived from sales.

    106.   BIFS' SEC filings show that BIFS' net worth was not $50 million or that its annual sales totaled more than $3 million when Jasper Knabb and Eric Swider made the above-described representations to Babak Dowlatshahi.

    107.   Jasper Knabb and Eric Swider represented to Babak Dowlatshahi that BIFS stock was a good investment for an individual like Babak Dowlatshahi. Neither Jasper Knabb nor Eric Swider had an adequate basis in fact for making these statements and did not believe them to be true.

    108.   Jasper Knabb and Eric Swider engaged in the above-alleged misconduct knowingly and willfully with the intent to defraud Babak Dowlatshahi, or with willful and reckless disregard of Babak Dowlatshahi's rights and interests.

    109.   Babak Dowlatshahi reasonably relied upon Jasper Knabb's and Eric Swider's fraudulent misrepresentations.

    110.   Jasper Knabb's and Eric Swider's misrepresentations induced Babak Dowlatshahi to enter into the Agreement.

27

111.     Jasper Knabb and Eric Swider held themselves out as agents of BIFS and BeachAccess. They informed Babak Dowlatshahi that they were authorized to make the above-described representations on behalf of BeachAccess and BIFS.

112.     Eric Swider also held himself out as an agent and registered representative of Edward Jones and that he was authorized by Edward Jones to make representations regarding BIFS stock and BIFS' financial condition.

113.     Jasper Knabb's acts, as described throughout this Amended Complaint, were within the course and scope of his employment with BIFS and BeachAccess. Eric Swider's acts, as described throughout this Amended Complaint, were within the course and scope of his employment with Edward Jones and his purported role as BIFS' financial advisor. BIFS and BeachAccess are liable for the acts and conduct of Jasper Knabb pursuant to the common-law principles of respondeat superior and agency. Edward Jones is liable for the acts and conduct of Eric Swider pursuant to the common-law principles of respondeat superior and agency.

113a.    Alpha Keyser individually participated in the fraud to induce Babak Dowlatshahi into selling PCW for, among other terms, BIFS stock and an employment contract with BIFS and BeachAccess. Upon information and belief, Alpha Keyser instructed or directed Jasper Knabb and other BIFS agents and employees to defraud Dowlatshahi as described above.

113b.    In response to specific inquiries from individuals acting on Babak Dowlatshahi's behalf, Alpha Keyser stated that Babak Dowlatshahi was to receive 2.5 million shares of freely tradable BIFS stock before August 2000. However, Babak Dowlatshahi has never received 2.5 million shares of BIFS stock.

113c.    Babak Dowlatshahi reasonably relied, to his detriment, upon Alpha Keyser's representations that he was to receive 2.5 million shares of BIFS stock before August 2000.

113d. BIFS and BeachAccess are liable for the acts and conduct of Alpha Keyser pursuant to the common-law principles of respondeat superior and agency.

114. As a direct result of Jasper Knabb, Eric Swider, and Alpha Keyser's fraud and deceit, Babak Dowlatshahi sustained damages, including but not limited to, lost profits and loss of business opportunity. Babak Dowlatshahi is entitled to compensatory and punitive damages in excess of $75,000.00 from Jasper Knabb, BIFS, BeachAccess, Edward Jones, Eric Swider, and Alpha Keyser.

**FIFTH CLAIM FOR RELIEF:**
**NEGLIGENT MISREPRESENTATION AND CONCEALMENT**
(Against Defendants Eric Swider, Jasper Knabb, Edward Jones, BIFS,
BeachAccess, and Alpha Keyser)

115. Paragraphs 1 through 114 are realleged and incorporated herein by reference.

116. As described above, Jasper Knabb and Eric Swider made various misrepresentations of material facts and failed to disclose material facts to Babak Dowlatshahi.

117. Eric Swider's and Jasper Knabb's representations were materially false, incomplete and misleading at the time they were made. In making such representations, Eric Swider and Jasper Knabb failed to exercise reasonable care and competence in obtaining and communicating information to Babak Dowlatshahi.

118. Babak Dowlatshahi reasonably relied, to his detriment, upon these misrepresentations and entered into the Agreement to sell PCW's assets and liabilities to BIFS and BeachAccess.

118a. In response to specific inquiries from individuals acting on Babak Dowlatshahi's behalf, Alpha Keyser stated that Babak Dowlatshahi was to receive 2.5 million shares of freely tradable BIFS stock before August 2000. However, Babak Dowlatshahi has never received 2.5 million shares of BIFS stock. In making such representations, Alpha Keyser failed to exercise

29

reasonable care and competence in obtaining and communicating information to Babak Dowlatshahi.

118b. Babak Dowlatshahi reasonably relied, to his detriment, upon Alpha Keyser's representations that he was to receive 2.5 million shares of BIFS stock before August 2000.

118c. BIFS and BeachAccess are liable for the acts and conduct of Alpha Keyser pursuant to the common-law principles of respondeat superior and agency.

119. As described above, BIFS, BeachAccess, and Edward Jones are liable for the conduct of Jasper Knabb and Eric Swider under the common-law principles of respondeat superior and agency.

120. As a direct result of such negligent misrepresentations, Babak Dowlatshahi sustained damages in excess of $75,000.00, including but not limited to, lost profits and loss of business opportunity. Babak Dowlatshahi is entitled to compensatory and punitive damages in excess of $75,000.00 from Jasper Knabb, BIFS, BeachAccess, Edward Jones, Eric Swider, and Alpha Keyser.

**SIXTH CLAIM FOR RELIEF: SECTION 10(b) OF THE SECURITIES EXCHANGE ACT OF 1934 AND SEC RULE 10b-5**
(Against all Defendants)

121. Paragraphs 1 through 120 are realleged and incorporated herein by reference.

121a. All defendants are participants in the scheme to defraud Dowlatshahi in violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5. In particular, all Defendants employed devises, schemes, and artifices to defraud Babak Dowlatshahi by, among other conduct, (a) making untrue statements of material facts; (b) omitting to state material facts; and (c) engaging in acts, practices, and a course of business which operated as a fraud and deceit upon Babak Dowlatshahi in violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5.

30

121b. Defendants, individually and as participants in a conspiracy to defraud Babak Dowlatshahi, directly and indirectly engaged and participated in a continuous course of conduct to conceal adverse material information about BIFS' business, operations, management, and stock, as described throughout this Amended Complaint.

122. Babak Dowlatshahi was not a sophisticated investor when he entered into the Agreement. He had no prior investment experience with securities and relied on the advice of Eric Swider and Edward Jones to provide information regarding the suitability of BIFS stock.

123. Eric Swider and Jasper Knabb engaged in the above-described misrepresentations and omissions knowing they were false or with reckless disregard to their accuracy, and with the intent to induce Babak Dowlatshahi to acquire BIFS stock. Eric Swider's and Jasper Knabb's conduct violated Section 10b of the Securities Exchange Act of 1934 and SEC Rule 10b-5.

124. As part of the Agreement, BIFS transferred 25,000 shares of its stock in exchange for PCW's assets and liabilities, before the April 15, 2000, 100:1 forward stock split. The Agreement, as described throughout the Amended Complaint constitutes a "sale" of stock, as defined by the Exchange Act.

125. As described throughout this Amended Complaint, Jasper Knabb and Eric Swider made misrepresentations regarding the financial condition and worth of BIFS. They further made deceptive representations regarding the worth of BIFS stock.

126. Eric Swider and Jasper Knabb knowingly and willfully, with the intent to defraud Babak Dowlatshahi, or in a reckless disregard of Babak Dowlatshahi's rights and interests, failed to disclose to Babak Dowlatshahi accurate information regarding BIFS' financial condition and BIFS stock.

31

127. Eric Swider's and Jasper Knabb's deceptive conduct fraudulently induced Babak Dowlatshahi to sell PCW's assets and liabilities.

128. Eric Swider's acts, as alleged throughout this Amended Complaint, were made within the course and scope of his employment with Edward Jones and Edward Jones is liable for Eric Swider's conduct pursuant to the common-law principles of respondeat superior and agency.

129. Jasper Knabb's acts, as alleged in this Amended Complaint, were made within the course and scope of his employment with BIFS and BeachAccess. BIFS and BeachAccess are liable for Jasper Knabb's conduct pursuant to the common-law principles of respondeat superior and agency. In addition, BIFS is also liable for the acts of BeachAccess under the theory of "control person liability" as the 100 percent owner of BeachAccess.

130. Babak Dowlatshahi reasonably relied on the misrepresentations and omissions of Jasper Knabb and Eric Swider, as described throughout this Amended Complaint, in accepting BIFS stock in exchange for PCW's assets and liabilities.

130a. Alpha Keyser was aware or recklessly disregarded that Jasper Knabb, Eric Swider, and other BIFS' employees and agents were disseminating false and misleading statements and information concerning BIFS, and acquiesced in, approved or ratified the content and dissemination of such statements and information in violation of federal and North Carolina securities laws.

130b. Alpha Keyser was able to and did control the content of various SEC filings, press releases, public statements, and other information pertaining to BIFS, including information presented to Babak Dowlatshahi on and after April 4, 2000.

32

130c.  At all relevant times, Alpha Keyser was responsible for the accuracy of public reports, press releases, and information connected with the disposition of BIFS stock. Alpha Keyser is liable for the representations concerning BIFS and BIFS stock, which are contained in such reports, statements, and releases, including information presented to Babak Dowlatshahi.

130d.  Eric Swider, Jasper Knabb, and Alpha Keyser were privy to and participated in the creation, development, and reporting of BIFS' information, plans, projections, and/or reports. Alpha Keyser, Eric Swider, and Jasper Knabb, by virtue of their responsibilities with BIFS, had significant personal contact and familiarity with BIFS' management, financial condition, and operations.

131.  As a result of the above-alleged conduct, Babak Dowlatshahi has been damaged in an amount in excess of $75,000.00, including but not limited to lost profits and loss of business opportunity.

132.  Babak Dowlatshahi is entitled to compensatory and punitive damages in excess of $75,000.00 from all Defendants for their participation in the scheme to defraud Babak Dowlatshahi and their violations of Section 10(b) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder.

**SEVENTH CLAIM FOR RELIEF: N.C.G.S. §78A-56**
(Against Defendants Jasper Knabb, Eric Swider, BIFS, BeachAccess,
Edward Jones, and Alpha Keyser)

133.  Paragraphs 1 through 132 are realleged and incorporated herein by reference.

134.  Eric Swider and Jasper Knabb engaged in the above-described misrepresentations and omissions knowing they were false or with reckless disregard to their accuracy, and with the intent to induce Babak Dowlatshahi into accepting BIFS stock.  Eric Swider's and Jasper Knabb's conduct violated N.C.G.S.§78A-56.

33

135.    As part of the Agreement, BIFS issued 25,000 shares of its stock, before the April 15, 2000, 100:1 forward stock split.

136.    As described throughout this Amended Complaint, Jasper Knabb and Eric Swider made misrepresentations regarding BIFS' financial condition. They further made deceptive representations regarding the worth of BIFS stock.

137.    Eric Swider's and Jasper Knabb's representations constitute untrue statements of material facts or omissions of material fact.

138.    Eric Swider's and Jasper Knabb's deceptive conduct fraudulently induced Babak Dowlatshahi to sell PCW's assets and liabilities.

139.    Eric Swider's acts, as alleged throughout this Amended Complaint, were made within the course and scope of his employment with Edward Jones and Edward Jones is liable for Eric Swider's conduct pursuant to the common-law principles of respondeat superior and agency.

140.    Jasper Knabb's acts, as alleged through this Amended Complaint, were made within the course and scope of his employment with BIFS and BeachAccess. BIFS and BeachAccess are liable for Jasper Knabb's conduct pursuant to the common-law principles of respondeat superior and agency.

141.    Babak Dowlatshahi reasonably relied on the misrepresentations and omissions of Jasper Knabb and Eric Swider, as described throughout this Amended Complaint, in accepting BIFS stock in exchange for PCW's assets and liabilities.

143.    Edward Jones, BIFS, and BeachAccess are jointly and severally liable for the acts of Eric Swider and Jasper Knabb, under N.C.G.S.§§78A-56(c).

143a.   Alpha Keyser's individual conduct violated N.C.G.S. §78A-56 in that:

34

a.   he participated in a scheme to fraudulently induce Babak Dowlatshahi into selling PCW in exchange for BIFS stock based on misrepresentations concerning the value of BIFS stock and BIFS' management, finances, and operations, in violation of federal and North Carolina securities laws, including N.C.G.S.§§78A-8 and 78A-56;

b.   he purchased shares of BIFS stock to increase the value of the stock and create a false and misleading appearance of active trading of BIFS stock, in violation of N.C.G.S. §§78A-12 and 78A-56; and

c.   he participated in other schemes and activities in violation of N.C.G.S. §§78A-56 as will be discovered and shown at trial.

144.   As a result of the above-alleged misrepresentations, Babak Dowlatshahi has been damaged in an amount in excess of $75,000.00, including but not limited to lost profits and loss of business opportunity.

145.   Babak Dowlatshahi is entitled to compensatory and punitive damages in excess of $75,000.00 from Jasper Knabb, BIFS, BeachAccess, Edward Jones, Eric Swider, and Alpha Keyser.

### EIGHTH CLAIM FOR RELIEF:N.C.G.S.§§78C-8 and 78C-38
(Against Defendants Eric Swider and Edward Jones)

146.   Paragraphs 1 through 145 are realleged and incorporated herein by reference.

147.   Eric Swider is engaged in the business of advising others, for compensation, as to the value of securities and as to the advisability of investing in and purchasing of securities.

148.   As described above, in response to Babak Dowlatshahi's requests, Eric Swider, on multiple occasions, made representations regarding BIFS' financial condition and BIFS stock. As alleged above, such representations were made to defraud Babak Dowlatshahi.

35

149.   Babak Dowlatshahi was in North Carolina when Eric Swider contacted him via telephone to make the above-alleged representations and to offer investment advice.

150.   Eric Swider was not registered in North Carolina as an investment adviser in violation of N.C.G.S.§78C-16 when he opened an Edward Jones account for Babak Dowlatshahi, when he became Babak Dowlatshahi's stockbroker, and when he offered investment advice and made the above-alleged representations to Babak Dowlatshahi.

151.   Babak Dowlatshahi reasonably relied on Eric Swider's advice and representations and was induced into accepting BIFS shares of common stock in exchange for PCW's assets and liabilities.

152.   Eric Swider, at all times alleged in the Amended Complaint, was an employee of Edward Jones and made the above-described representations to Babak Dowlatshahi while in the course and scope of his employment.  In addition, he made these misrepresentations while he was Babak Dowlatshahi's stockbroker and account executive.  Edward Jones is, therefore, jointly and severally liable for Eric Swider's conduct, per N.C.G.S. §78C-38(b) and per the common-law principles of respondeat superior and agency.

153.   As a result of Eric Swider's conduct violation of N.C.G.S. §§78C-8 and 78C-38, Babak Dowlatshahi is entitled to recover damages in excess of $75,000.00 from Eric Swider and Edward Jones.

## NINTH CLAIM FOR RELIEF:
## SECTIONS 5 AND 12(a)(1) OF THE SECURITIES ACT
(Against all Defendants)

154.   Paragraphs 1 through 153 are realleged and incorporated herein by reference.

155.   As part of the Agreement, Babak Dowlatshahi was to acquire 2.5 million shares of registered and freely tradable BIFS common stock.  Instead, BIFS and Florida Atlantic sent

Babak Dowlatshahi a stock certificate for 25,000 shares of unregistered BIFS common stock by mail.

156. Babak Dowlatshahi was issued 25,000 shares of unregistered BIFS common stock when the Agreement required that the stock be registered.

157. Jasper Knabb, Eric Swider, and Paul Aubin specifically admitted that Babak Dowlatshahi should have received 25,000 shares of registered and freely tradable BIFS common stock as part of the Agreement, that the shares were subject to the 100:1 forward stock split and that Babak Dowlatshahi should have received 2.5 million shares.

158. Upon information and belief, no registration statement was in effect for the securities issued to Babak Dowlatshahi at the time they were issued.

159. On multiple occasions after April 15, 2000, Babak Dowlatshahi contacted all Defendants requesting that 2.5 million shares of registered and freely tradable stock be issued. However, he was never issued 2.5 million shares of registered and freely tradable stock.

160. Defendants' conduct violated Sections 5 and 12(a)(1) of the Securities Act and Babak Dowlatshahi is entitled to compensatory damages in excess of $75,000.00 from all Defendants.

### TENTH CLAIM FOR RELIEF:
### VIOLATION OF THE NASD CONDUCT RULES
(Against Defendants Eric Swider and Edward Jones)

161. Paragraphs 1 through 160 are realleged and incorporated herein by reference.

162. Eric Swider's conduct, as alleged above, violated the NASD's Conduct Rules, including but not limited to the following:

        a. Eric Swider did not have reasonable grounds for believing that BIFS stock was suitable for Babak Dowlatshahi;

37

b.     Eric Swider did not make reasonable efforts to obtain information regarding Babak Dowlatshahi's circumstances bearing on the suitability;

c.     Eric Swider, in participating and conducting the acquisition of PCW and as Babak Dowlatshahi's stockbroker, violated the "suitability" and "know your client" rules established by the NASD. Specifically, it was a violation of these rules for Eric Swider to recommend that BIFS stock be used in the acquisition of PCW and that Babak Dowlatshahi should invest in BIFS based on his investment experience and investment needs.

163.     Eric Swider's conduct, as alleged above, also violated various other NASD Conduct Rules as will be discovered and shown at trial.

164.     Eric Swider's misconduct, as alleged above, occurred within the course and scope of his employment, and Edward Jones is liable for such misconduct pursuant to the common-law principles of respondeat superior and agency. Edward Jones is also liable for its own violations of the NASD Conduct Rules, which will be discovered and shown at trial.

165.     As a result of Eric Swider's and Edward Jones' violations of the NASD Conduct Rules, Babak Dowlatshahi is entitled to recover an amount in excess of $75,000.00 from Eric Swider and Edward Jones.

**ELEVENTH CLAIM FOR RELIEF:**
**BREACH OF DUTY TO REGISTER TRANSFER OR**
**PROVIDE A PROPER STOCK CERTIFICATE**
(Against Defendants BIFS and Florida Atlantic)

166.     Paragraphs 1 through 165 are realleged and incorporated herein by reference.

167.     Per the terms of the Agreement, on April 4, 2000, BIFS and Florida Atlantic were required to issue 25,000 shares of registered and freely tradable BIFS common stock to Babak Dowlatshahi and register the shares in BIFS stock transfer ledger.

38

168. Upon information and belief, the stock transfer had not been registered in BIFS' corporate records, in violation of Fla. Stat. §678.4011.

169. BIFS and Florida Atlantic is liable to Babak Dowlatshahi for loss resulting from their unreasonable delay in the registration or failure or refusal to register the transfer, pursuant to Fla. Stat. §678.4011.

170. In the alternative and if the stock transfer was registered in BIFS' corporate records, BIFS and Florida Atlantic failed to issue the 2.5 million shares of registered and freely tradable stock and failed to forward a proper stock certificate indicating the same. Babak Dowlatshahi is entitled to receive 2.5 millions shares of registered and freely tradable BIFS common stock from BIFS and recover any loss resulting from the above-alleged delay by BIFS and Florida Atlantic.

**TWELFTH CLAIM FOR RELIEF:**
**CIVIL CONSPIRACY/AIDING AND ABETTING**
(Against all Defendants)

171. Paragraphs 1 through 170 are realleged and incorporated herein by reference.

172. Upon information and belief, Defendants entered into an agreement and conspired to defraud Babak Dowlatshahi pursuant to a common scheme.

173. Upon information and belief, Jasper Knabb and Eric Swider conspired with BIFS and BeachAccess to acquire PCW, to drain PCW's profits and sales, and ultimately close down PCW's operation.

173a. Upon information and belief, all Defendants entered into a civil conspiracy to prevent Babak Dowlatshahi from receiving and selling 2.5 million shares of BIFS stock.

d.   BIFS and Florida Atlantic failed to issue 2.5 million shares of registered and freely tradable BIFS common stock after the April 15, 100:1 forward stock split;

e.   Florida Atlantic, with knowledge that Babak Dowlatshahi should have been issued 2.5 million shares of BIFS common stock, provided misleading and contradictory information in response to Babak Dowlatshahi's inquiries, to assist and encourage the violation of the Agreement and the violations of the Federal and State securities laws, as alleged above;

f.   BIFS, BeachAccess, and Jasper Knabb seized control over the management and finances of PCW;

g.   Babak Dowlatshahi was required to forward all proceeds from PCW's sales to Jasper Knabb directly;

h.   Babak Dowlatshahi was prevented from paying PCW's vendors and suppliers for inventory previously purchased on credit;

i.   BIFS and BeachAccess terminated Babak Dowlatshahi's employment without any explanation or reason and in violation of the Agreement; and

j.   Other acts to defraud Babak Dowlatshahi that will be discovered and shown at trial.

176.   As participants of the civil conspiracy to defraud Babak Dowlatshahi, BIFS, BeachAccess, and Edward Jones are jointly and severally liable for the acts of Jasper Knabb, Eric Swider, and Alpha Keyser as alleged above.

41

176a. Alpha Keyser participated in the civil conspiracy to defraud Babak Dowlatshahi as described throughout this Amended Complaint and as will be discovered and shown at trial.

177. Babak Dowlatshahi is entitled to compensatory and punitive damages in excess of $75,000.00 from all Defendants.

## THIRTEENTH CLAIM FOR RELIEF:
### BREACH OF FIDUCIARY DUTY
(Against Defendants Eric Swider and Edward Jones)

178. Paragraphs 1 through 177 are realleged and incorporated herein by reference.

179. As part of the Agreement, Babak Dowlatshahi opened an Edward Jones account and Eric Swider became his stockbroker.

180. As a registered representative employed by Edward Jones and a broker licensed and registered with the NASD, Eric Swider owed a fiduciary duty to Babak Dowlatshahi when he participated in the April 4, 2000 meeting and when he made representations regarding BIFS' financial condition and stock. Eric Swider also owed a fiduciary duty to Babak Dowlatshahi when he became his stockbroker.

181. Eric Swider breached these fiduciary duties by making misrepresentations regarding the value of BIFS stock and BIFS' financial condition, as described above.

182. Eric Swider breached his fiduciary duties to Babak Dowlatshahi by engaging in self-dealing by recommending that Babak Dowlatshahi acquire BIFS stock in exchange for PCW's assets and liabilities and by requiring Babak Dowlatshahi to open an Edward Jones account and designating him as the account executive.

183. After becoming his account executive, Eric Swider failed to inform Babak Dowlatshahi of the true value of BIFS stock and BIFS' financial condition in violation of his fiduciary duty.

42

184. As a result of these breaches of fiduciary duties, Babak Dowlatshahi was fraudulently induced to sell PCW's assets and liabilities.

185. Eric Swider's conduct and acts, as described throughout the Amended Complaint, were done intentionally and in a willful and reckless disregard of the rights of Babak Dowlatshahi.

186. Edward Jones is also liable for the conduct of Eric Swider under the common-law principles of respondeat superior and agency.

187. Babak Dowlatshahi is entitled to compensatory and punitive damages in an amount in excess of $75,000.00 from Eric Swider and Edward Jones.

**FOURTEENTH CLAIM FOR RELIEF:**
**NEGLIGENCE AND GROSS NEGLIGENCE**
(Against Defendants Eric Swider and Edward Jones)

188. Paragraphs 1 through 187 are realleged and incorporated herein by reference.

189. As a registered representative licensed and registered with the NASD and employed by Edward Jones and as Babak Dowlatshahi's stockbroker, Eric Swider owed a duty to act as a reasonably prudent stockbroker in giving financial advice and representations to Babak Dowlatshahi.

190. Eric Swider's failure to exercise due care proximately caused damages to Babak Dowlatshahi, as described throughout this Amended Complaint.

191. Edward Jones negligently supervised Eric Swider and negligently failed to oversee the transaction that took place in its office. Such negligence was the proximate cause of Babak Dowlatshahi's damages.

43

192. Eric Swider was acting within the course and scope of his employment with Edward Jones and Edward Jones is liable for Eric Swider's conduct pursuant to the common-law principles of respondeat superior and agency.

193. Eric Swider's and Edward Jones' negligent acts were committed with a willful and wanton disregard and reckless indifference to Babak Dowlatshahi's interests.

194. As a result of the above-described negligence, Babak Dowlatshahi has been damaged in an amount in excess of $75,000.00 and is entitled to compensatory from Eric Swider and Edward Jones.

**FIFTEENTH CLAIM FOR RELIEF:**
**QUANTUM MERUIT**
(Against Defendants Edward Jones, Eric Swider, Jasper Knabb, BIFS,
BeachAccess, and Alpha Keyser)

195. Paragraphs 1 through 194 are realleged and incorporated herein by reference.

196. Babak Dowlatshahi transferred control and ownership of PCW's assets and liabilities to BIFS and BeachAccess. Babak Dowlatshahi also opened an Edward Jones account and designated Eric Swider as his stockbroker. In addition, Babak Dowlatshahi continued to work at PCW as its sales manager and sent proceeds and profits from PCW's sales to Jasper Knabb. At the time Babak Dowlatshahi performed under the Agreement, he reasonably expected to receive 2.5 million shares of registered and freely tradable BIFS common stock and a two-year employment contract, as described above.

197. Jasper Knabb, BIFS, BeachAccess, Eric Swider, Alpha Keyser and Edward Jones received and benefited from Babak Dowlatshahi's performance of the Agreement with knowledge or reason to know that he expected to receive 2.5 million shares of registered and freely tradable BIFS common stock and a two-year employment contract, as described above. BIFS, BeachAccess, Jasper Knabb, Eric Swider, Alpha Keyser and Edward Jones kept the

44

benefits arising from Babak Dowlatshahi's performance of the Agreement, as described throughout this Amended Complaint, without objection or returning the benefits to Babak Dowlatshahi.

198. Babak Dowlatshahi is entitled, under the doctrine of quantum meruit, to recover from Jasper Knabb, BIFS, BeachAccess, Eric Swider, Alpha Keyser and Edward Jones compensatory damages in an amount in excess of $75,000.00.

### SIXTEENTH CLAIM FOR RELIEF:
### UNJUST ENRICHMENT
(Against Defendants Edward Jones, Eric Swider, Jasper Knabb, BIFS, Alpha Keyser, and BeachAccess)

199. Paragraphs 1 through 198 are realleged and incorporated herein by reference.

200. Babak Dowlatshahi acted in good faith and reliance upon actions and representations of Edward Jones, Eric Swider, Jasper Knabb, BIFS, Alpha Keyser and BeachAccess when performing and complying per the Agreement as described throughout the Amended Complaint.

201. Edward Jones, Eric Swider, Jasper Knabb, BIFS, Alpha Keyser and BeachAccess were unjustly enriched at the expense of Babak Dowlatshahi, and it would be inequitable for Edward Jones, Eric Swider, Jasper Knabb, BIFS, and BeachAccess to retain the benefits of Babak Dowlatshahi's services and performance of the Agreement without proper compensation per the terms of the Agreement.

202. Babak Dowlatshahi is entitled to compensatory and punitive damages in excess of $75,000.00 from Edward Jones, Eric Swider, Jasper Knabb, BIFS, Alpha Keyser, and BeachAccess for any unjust enrichment received by them.

### SEVENTEENTH CLAIM FOR RELIEF: N.C.G.S. §75-1.1
### UNFAIR AND DECEPTIVE TRADE PRACTICES
(Against all Defendants)

45

203. Paragraphs 1 through 202 are realleged and incorporated herein by reference.

204. The Defendants' actions and conduct, as alleged above, constitute unfair or deceptive acts, practices, and methods of competition, in or affecting commerce in violation of N.C.G.S. §75-1.1.

204a. Alpha Keyser's actions, as described throughout this Amended Complaint, constitute unfair and deceptive acts, practices, and methods of competition, in or affecting commerce in violation of N.C.G.S. §§75-1.1.

205. As a consequence of Defendants' unfair and deceptive acts or practices, Babak Dowlatshahi is entitled to recover treble damages, pursuant to N.C.G.S. §75-16, and to recover reasonable attorney's fees, pursuant to N.C.G.S.§75-16.1, from all Defendants.

## EIGHTEENTH CLAIM FOR RELIEF:
## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
(Against all Defendants)

206. Paragraphs 1 through 205 are realleged and incorporated herein by reference.

207. Defendants engaged in a pattern of racketeering activity, as described above, by engaging in at least two incidents of racketeering activity, as defined by N.C.G.S.§§75D-1 *et seq.*, and 18 U.S.C. §§1961 *et seq.*

208. Defendants devised a scheme to defraud Babak Dowlatshahi and to acquire PCW by means of false pretenses, representations and promises.

209. On at least two occasions, Defendants defrauded Babak Dowlatshahi by inducing him to sell PCW's assets and liabilities.

210. On at least two occasions, Defendants used the mail and other interstate facilities:

　　　　a.　　to distribute proceeds from their common scheme to defraud Babak Dowlatshahi;

46

b.   to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of their unlawful activities to defraud Babak Dowlatshahi; and

c.   to transport proceeds from PCW's sales, which were acquired by fraud.

211.   On at least two occasions, Jasper Knabb committed the offense of malfeasance of a corporate agent in that all Defendants developed and implemented a scheme to embezzle, or willfully misapply PCW's funds in violation of N.C.G.S.§14-254.

212.   Upon information and belief, Defendants engaged in a similar scheme to defraud and acquire other companies in North Carolina. Upon information and belief, Jasper Knabb and Eric Swider fraudulently induced the previous owner of Knight Design to sell his business to BIFS. BIFS acquired Knight Design, a company located in North Carolina, for 1.75 million shares of free-trading registered stock. However, as in the instant case, BIFS breached its contract with Knight Design and refused to issue the promised shares.

212a.   Alpha Keyser engaged in a pattern of racketeering activity, by engaging in at least two incidents of racketeering activity, as defined by N.C.G.S. §§75D-1 *et seq.* and 18 U.S.C. §§1961 *et seq.*, by participating in a scheme to use the mail and other interstate facilities:

a.   to distribute proceeds from Defendants' common scheme to defraud Babak Dowlatshahi;

b.   to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of their unlawful activities to defraud Babak Dowlatshahi; and

c.   to transport proceeds from PCW's sales, which were acquired by fraud.

47

212b. On at least two occasions, Alpha Keyser participated in a scheme to commit malfeasance of a corporate agent in that he, in concert with the other Defendants, developed and implemented a scheme to embezzle or willfully misapply PCW's funds in violation of N.C.G.S. §14-254.

212c. Upon information and belief, Alpha Keyser participated in a scheme to induce several business owners in North Carolina and South Carolina to enter into several contracts and accept BIFS stock as payment but refused to have the promised shares issued.

213. Babak Dowlatshahi, by reason of Defendants' violation of N.C.G.S.§75D, *et seq.* and 18 U.S.C.§1961 *et seq.*, is entitled to treble the actual amount of damages sustained as a result of Defendants' racketeering activities, which are in excess of $75,000.00, and reasonable attorney's fees.

## NINETEENTH CLAIM FOR RELIEF:
## TORTIOUS INTERFERENCE WITH A CONTRACT RIGHT
(Against Alpha Keyser)

214. Paragraphs 1 through 213 are realleged and incorporated herein by reference.

215. As described above, Babak Dowlatshahi, BIFS, and BeachAccess entered into a valid and binding contract that called for the issuance of 2.5 millions shares of freely tradable BIFS stock to Babak Dowlatshahi.

216. Alpha Keyser was aware of the contract between Babak Dowlatshahi, BIFS, and BeachAccess.

217. Upon information and belief, Alpha Keyser intentionally induced BIFS not to perform its contract with Babak Dowlatshahi by:

        a.    without justification, instructing Florida Atlantic not to issue 2.5 million shares of BIFS stock to Babak Dowlatshahi;

48

b.      instructing BIFS' agents not to register in BIFS' corporate books the

transfer of 2.5 million shares of BIFS stock to Babak Dowlatshahi; and

c.      other acts that will be discovered and shown at trial.

218.    Alpha Keyser acted without justification.    He also acted willfully and with

reckless disregard of Babak Dowlatshahi's contractual rights.

219.    As a result of Alpha Keyser's tortious interference, he prevented Babak

Dowlatshahi from receiving and selling his BIFS stock.

220.    As a result of Alpha Keyser's tortious interference, Babak Dowlatshahi is entitled

to compensatory and punitive damages in excess of $75,000.00 from Alpha Keyser.

## TWENTIETH CLAIM FOR RELIEF: ALTER EGO
(Against Alpha Keyser)

221.    Paragraphs 1 through 220 are realleged and incorporated herein by reference.

222.    Upon information and belief, BIFS and BeachAccess are alter egos or

instrumentalities of Alpha Keyser.

223.    On or about July 23, 2001, a Moore County Superior Court Judge held that Alpha

Keyser retained the right to personally accept or reject any project for BIFS or BeachAccess and

that Alpha Keyser's instructions, directions, and conduct constituted individual acts beyond that

of a corporate officer of BIFS or BeachAccess. In addition, the Moore County Superior Court

Judge held that Alpha Keyser, individually, controlled the activities of BeachAccess.

224.    Upon information and belief, at all times relevant to this action, Alpha Keyser had

complete dominion and control over the finances, policies, and practices of BIFS and

BeachAccess with respect to all transactions and business decisions.

225.    Upon information and belief, Alpha Keyser used his dominion and control over

BIFS and BeachAccess to perpetrate fraud and wrong upon Babak Dowlatshahi.

49

226. Upon information and belief, Alpha Keyser's dominion and control over BIFS and BeachAccess proximately caused Babak Dowlatshahi to sustain damages in excess of $75,000.00.

227. Because BIFS and BeachAccess are alter egos of Alpha Keyser, Babak Dowlatshahi is entitled to recover compensatory and punitive or treble damages from Alpha Keyser as a result of the conduct and activities of BIFS and BeachAccess.

### TWENTY-FIRST CLAIM FOR RELIEF:
### SECTIONS 20 AND 20A OF THE EXCHANGE ACT AND INSIDER TRADING
(Against all Defendants)

228. Paragraphs 1 through 227 are realleged and incorporated herein by reference.

229. Defendants Jasper Knabb and Alpha Keyser acted as controlling persons of BIFS within the meaning of Section 20 of the Exchange Act and as described herein. Jasper Knabb and Alpha Keyser, through their positions and responsibilities with BIFS, had the power to influence and control and did influence and control, directly or indirectly, the decision-making of BIFS, including the content and dissemination of statements and information to Babak Dowlatshahi. Such information was false and misleading as described throughout this Amended Complaint.

230. Alpha Keyser and Jasper Knabb had direct and supervisory involvement in the day-to-day operations of BIFS and were involved in and influenced the transactions giving rise to the violations of federal and North Carolina securities laws as alleged herein, including but not limited to preventing Babak Dowlatshahi from receiving 2.5 million shares of BIFS stock and preventing Babak Dowlatshahi from selling such stock.

231. As described above, all Defendants by virtue of their participation in the scheme to defraud Dowlatshahi and through their violations of federal and North Carolina securities laws

50

as described above aided and abetted BIFS and Alpha Keyser in the violations of Sections 20 and 20A of the Exchange Act.

232.    Upon information and belief, Alpha Keyser knew that information and statements concerning BIFS and BIFS stock which were made to Babak Dowlatshahi and other individuals were misleading and false.  Upon information and belief, Alpha Keyser was aware of and had knowledge of facts that were being concealed from Babak Dowlatshahi and other individuals, including information concerning BIFS' finances, management, and operations.

233.    Alpha Keyser engaged in the unlawful trading of BIFS stock by disposing of millions of dollars of his own BIFS stock while in possession of adverse information concerning BIFS operations, finances, and management.  Notwithstanding his duty to refrain from selling BIFS stock while in the possession of material and non-public information concerning BIFS' finances, operations, and management, Alpha Keyser participated in a large amount of insider selling of BIFS stock.  In particular, Alpha Keyser has sold in excess of 24.8 million shares of BIFS stock for approximately $6.2 million since April 4, 2000.

234.    As a direct and proximate result of Defendants' violations of Sections 20 and 20A of the Exchange Act, Babak Dowlatshahi has sustained damages in excess of $75,000.00 and is entitled to compensatory and punitive damages from all Defendants.

WHEREFORE, having set forth his claims against Defendants, Babak Dowlatshahi respectfully prays the Court as follows:

1.    That he have and recover from Defendants, jointly and severally, compensatory damages in excess of $75,000.00, plus pre- and post-judgment interest;

51

2. That he have and recover punitive and/or treble damages, as set out above, pursuant to N.C.G.S. §§75D-8, 75-16, 18 U.S.C. §1964, and as otherwise allowed by law;

3. That he recover his reasonable attorney's fees, pursuant to N.C.G.S. §§75D-8, 75-16.1, 18 U.S.C. §1964, and as otherwise allowed by law;

4. That the costs of this action be taxed against Defendants;

5. That he have a trial by jury on all issues so triable; and

6. That he have such other and further relief as the Court may deem just and proper.

This the ___12th___ day of February, 2002.

MAUPIN TAYLOR & ELLIS, P.A.

By:_____
James E. Gates
N. C. Bar No. 13189

By:_____
Hans H. Huang
N. C. Bar No. 25575
3200 Beechleaf Court, Suite 500
Post Office Drawer 19764
Raleigh, North Carolina 27619-9764
Telephone: (919) 981-4000
Attorneys for Plaintiff

52

## CERTIFICATE OF SERVICE

It is hereby certified that on this date the foregoing Second Amended Complaint was served on the parties to the action by mailing copies thereof to their counsel at the addresses indicated below with the proper postage attached and deposited in an official depository under the exclusive care and custody of the United States Postal Service in Raleigh, North Carolina, in accordance with the provisions of Rule 5 of the Federal Rules of Civil Procedure and Local Rule 2.06, E.D.N.C.

This the 12th day of February, 2002.

MAUPIN TAYLOR & ELLIS, P.A.

BY: _Hans H._ _____

Hans H. Huang
N.C. State Bar No. 25575
3200 Beechleaf Court, Suite 500
Raleigh, North Carolina 27604-1064
Telephone: (919) 981-4000
Facsimile: (919) 981-4300
Attorneys for Plaintiff

SERVED:

Louis B. Meyer, III, Esq.
Poyner & Spruill, L.L.P.
Post Office Box 10096
Raleigh, NC 27605-0096

Matthew P. Plyler, Esq.
The Plyler Law Firm, P.A.
Post Office Box 53987
Fayetteville, NC 28305-3987

Jasper Knabb
1607 Magnolia Drive
N. Myrtle Beach, SC 29582

J. Anthony Penry, Esq.
Penry Riemann PLLC
1111 Haynes Street, Ste. 205
Raleigh, NC 27604

Mark C. Perry
2455 East Sunrise Boulevard
Suite 905
Fort Lauderdale, Fl 33304

53

## BILL OF SALE

STATE OF SOUTH CAROLINA

COUNTY OF HORRY

KNOW ALL PERSONS BY THESE PRESENTS:

THAT PC WHOLESALE-NC, Sole proprietorship, Seller, of 5111 yadkin rd,Fayetteville N.C., cummberland County, North Carolina, in consideration of the payment of the sum of Twenty-five thousand (25,000) shares of BioFiltration Systems, Inc. (BIFS) stock, does hereby sell and transfer to Beachaccess.net, Inc., Buyer, of 9618 North Kings Highway, Myrtle Beach, Horry County, South Carolina, his/her successors and assigns, its PC Distribution ,A/R and all equipment and hardware relative to such Business.

Seller warrants that he/she is the lawful owner in every respect of all of the described property and that it is free and clear of all liens, security agreements, encumbrances, claims, demands, and charges of every kind whatsoever.

Seller binds Seller, his/her successors and assigns, to warrant and defend the title to all of the described property to Buyer, his/her successors and assigns, forever against every person lawfully claiming the described property or any part of it.

This Bill of Sale is contingent upon execution of transfer of said shares of stock to Babak Dowlatshahi account.

This Bill of Sale shall be effective as to the transfer of all property listed in it as of March 31, 2000.

IN WITNESS WHEREOF, this Bill of Sale is executed on ___4 - 4 - 2000___

Babak Dowlatshahi, Owner
PC Wholesale, Sole Proprietorship

Jay Knabb
Beachaccess.net, Inc.

Witness

Witness

**EXHIBIT**

A

SHARES

**25,000**

# BIOFILTRATION SYSTEMS, INC.

INCORPORATED UNDER THE LAWS OF THE STATE OF FLORIDA

COMMON STOCK

SEE REVERSE FOR
CERTAIN DEFINITIONS

CUSIP 09059310 4

THIS CERTIFIED THAT: ***BABAK DOWLATSHAHI***

IS OWNER OF ***TWENTY FIVE THOUSAND***

FULLY PAID AND NON-ASSESSABLE SHARES OF COMMON STOCK OF $.001 PAR VALUE EACH OF

## BIOFILTRATION SYSTEMS, INC.

transferable on the books of the Corporation in person or by attorney upon surrender of this certificate duly transferable on the books of the Corporation in person or by attorney upon surrender of this certificate duly endorsed or assigned. This certificate and the shares represented hereby are subject to the laws of the State of Florida and to the Certificate of Incorporation and Bylaws of the Corporation, as now or hereafter amended. This certificate is not valid until countersigned by the Transfer Agent.

WITNESS the facsimile seal of the Corporation and the facsimile signatures of its duly authorized officers.

DATED: April 10, 2000

*Victoria M. Kyser*
SECRETARY & TREASURER

COUNTERSIGNED: FLORIDA ATLANTIC STOCK TRANSFER
7130 KNOX HILL RD. TAMARAC, FL 33321
TRANSFER AGENT

By

PRESIDENT

AUTHORIZED SIGNATURE

(SEAL: BIOFILTRATION SYSTEMS, INC. CORPORATE SEAL 1992 FLORIDA)

EXHIBIT
B

The following abbreviation when used in the inscription of the face of this certificate, shall be construed as though they were written out in full according to applicable laws of regulations:

TEN COM - as tenants in common
TEN ENT - as tenants by the entireties
JT TEN - as joint tenants with right of

    survivorship and not as tenants
    in common

TUNIF GIFT ACT - ...............Custodian....................
              (Cust)         (Minor)
    under Uniform Gifts to Minors

    Act...................
       (State)

Additional abbreviations may also be used though not in the above list.

For Value Received, _____ hereby sell, assign and transfer unto

PLEASE INSERT SOCIAL SECURITY OR OTHER
IDENTIFYING NUMBER OF ASSIGNEE

_____

(PLEASE PRINT OR TYPEWRITE NAME AND ADDRESS, INCLUDING ZIP CODE, OF ASSIGNEE)

_____

_____

_____ Shares

of the stock represented by the within Certificate, and do hereby irrevocably constitute and appoint

_____ Attorney

to transfer the said stock on the books of the within named Corporation with full power of substitution in the premises.

Dated _____

NOTICE: THE SIGNATURE TO THE ASSIGNMENT MUST CORRESPOND WITH THE NAME AS WRITTEN UPON THE FACE OF THE CERTIFICATE IN EVERY PARTICULAR, WITHOUT ALTERATION OR ENLARGEMENT OR ANY CHANGE WHATEVER.

The shares represented by this certificate have not been registered under the Securities Act of 1933 and are "restricted securities" as that term is defined in Rule 144 under the Act. The shares may not be sold or offered for sale except pursuant to an effective registration statement under the Securities Act of 1933 or an opinion of counsel for the corporation that registration is not required under such Act.

BIOFILTRATION SYSTEMS, INC. is authorized to issue shares of more than one class or series. The Articles of Incorporation of BIOFILTRATION SYSTEMS, INC., as amended, set forth a statement of the designations, preferences, limitations and relative rights of the shares of each class or series to the extent they have been fixed and determined by the Board of Directors and a statement of the authority of the Board of Directors to fix and determine the designations, preferences, limitations and relative rights of subsequent series. The corporation will furnish a copy of such statement to the record holder of this certificate without charge on written request to the corporation at its principal place of business.

To: Mr. Babak Dowlatshaki

From: Beachaccess.net, Paul Aubin

Re: Termination agreement letter

Date: 6.29.00

This letter is being written upon your request to specify the condition that will exist at your termination. I was informed that you were concerned about two issues regarding your termination with PC Warehouse. Those concerns involved the current outstanding debt that is owed to the 28 vendors of PC Warehouse and the concern regarding your stock issue.

Beachaccess.net will be taking steps to honor all the outstanding debt due the 28 vendors of whom we are currently aware. We are already taking steps to do that and have already considerably paid down the debt.

With respect to your stock, your stock has been registered with the SEC. As soon as the SEC releases the certificates, they will be forwarded to you.

Effective immediately upon receipt of this fax, Beachaccess.net requires you to collect all your personal belongings from the facility and leave the premises. With this termination you must realize that Beachaccess.net has no other obligations to agreements that you have made or to you personally and that you can no longer represent yourself as an employee of either Beachaccess.net or PC Warehouse. I must further remind you as a past employee that any information disclosed to you during your employment of a confidential or sensitive nature must still be honored as confidential. Any disclosure of this information can result in legal action.

*Paul Aubin*

Bus: 843 236-1073

Home: 843 - 650 - 2000

cell: 843 - 340 - 8009


EXHIBIT
C

JUN-29-2000 14:58 FROM:BEACHACCESS    843-497-6495    TO:19190847425    P.001/001

| Type: | Fax |
|---|---|
| Fax Number: | |
| Sender: | 843 497 6495 |
| Pages: | 1 |
| Date: | 6/29/00 |
| Time: | 3:56 PM |
| Duration: | 0 min 46 sec |
| Company: | |
| Subject: | |

Received Event (Event Succeeded)

To:     Mr. Jay Knab
          Beachaccess.Net
From: Babak Dowlatshahi
Re: Change of restriction from 1 year to 90 days

Date: 7.13.00

        As per our conversation yesterday, you were suppose to fax me a letter stating the change of
restriction on my Biofilteration stock certificate from one year to 90 days. As of today I have not receive the letter.
Please fax the letter to 910-867-7894  or  let me know when this can be done. This certificate was suppose to been
issued with the 90 days restriction.

Thank you

Babak Dowlatshahi

